UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CUMMINS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 1:09-cv-0738-JMS-DML ) |
| ACE AMERICAN INSURANCE COMPANY, et al., | ) ) ) ) |
| Defendants. | ) |

# Order on Plaintiff's Second Motion to Compel

This matter came before the court on a motion to compel (Dkt. 115) filed by plaintiff Cummins, Inc. regarding documents that the defendant insurance companies (the "Insurers") withheld from production on attorney-client privilege or work product grounds. The Insurers also withheld certain other documents on the assertion that they are not relevant to any claim or defense. The court earlier addressed some issues raised by Cummins's motion and directed the Insurers to submit for *in camera* review by this magistrate judge the documents identified on their privilege logs. (*See* Dkt. 132). The court has reviewed the documents and issues this ruling.

**Background**

This case concerns insurance coverage to Cummins for losses from a severe flood in Columbus, Indiana in June 2008, the location of Cummins's main corporate campus. Cummins contends it has suffered more than $200 million in losses from the flood. The defendants are 13 insurance companies that provided coverage to Cummins for the period August 1, 2007, through August 1, 2008, under the terms of materially identical insurance policies that were "shopped" to the Insurers by Cummins's insurance broker. The latest information from the

Insurers is that Cummins has been paid $91,948,824 to date on the claims it has submitted to the Insurers ("Claim").

## Attorney-Client Privilege

In a diversity case where state law provides the substantive rule of decision, privileges are determined in accordance with the applicable state law. Fed. R. Evid. 501 (in civil actions where state law supplies rule of decision, privilege "shall be determined in accordance with State law"); *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1097 (7th Cir. 1987) (Indiana attorney-client privilege law applied in diversity case). Although the parties have not formally agreed that Indiana law applies to their insurance coverage and bad faith disputes, the Insurers contend that Indiana's attorney-client privilege law applies and Cummins does not contest that view. The court will apply Indiana attorney-client privilege law to the issues presented.[1]

Indiana's attorney-client privilege is an evidentiary privilege codified at Ind. Code § 34-46-3-1:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases.

The privilege is intended to encourage "'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Lahr v. State,* 731 N.E.2d 479, 482 (Ind. Ct. App. 2000) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). The privilege assures a client that it can provide complete and candid information in confidence to its counsel and counsel in turn can

---

[1] The court also notes that under Indiana's choice of law rules, the general rule is that an insurance policy "'is governed by the law of the principal location of the insured risk during the term of the policy.'" *National Union Fire Ins. Co. v. Standard Fusee Corp.,* 940 N.E.2d 810, 814 (Ind. 2010) (quoting *Dunn v. Meridian Mutual Ins. Co.,* 836 N.E.2d 249, 251 (Ind. 2005)).

provide complete and candid legal advice about the client's rights and liabilities without fear that the confidences will be revealed. *Lahr,* 731 N.E.2d at 482; *Hartford Financial Services Group, Inc. v. Lake Cnty. Park and Recreation Bd.,* 717 N.E.2d 1232, 1235 (Ind. Ct. App. 1999); *Corll v. Edward D. Jones & Co.,* 646 N.E.2d. 721, 724 (Ind. Ct. App. 1995) (attorney-client privilege "applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities").

Indiana also recognizes that the privilege is not compromised through the sharing of otherwise confidential communications among clients with a common legal interest. *Corll,* 646 N.E.2d at 725 (quoting *McCormick on Evidence* § 91 (4th ed. 1992)) ("[w]hen two or more persons, with a common interest in some legal problem, jointly consult an attorney, 'their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both the clients with the outside world'").

The party relying on the privilege to withhold a communication has the burden to prove the privilege's applicability and must do so on a communication-by-communication or document-by-document basis. *Howard v. Dravet,* 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004) (insurer required to establish attorney-client privilege on a document-by-document basis).

Cummins argues that insurance companies face additional obstacles in asserting the privilege because communications between an insurer and its counsel that involve the "ordinary business of insurance companies responding to an insurance claim" are not privileged. (*See* Cummins's reply brief, Dkt. 131, at 15). Cummins contends that because policy coverage analysis and coverage issues are necessarily part of the business of insurance, an insurer who obtains advice from a lawyer about coverage necessarily is getting business advice and not legal advice. (*See id.* at p. 18; Cummins's opening brief, Dkt. 116, at p. 9). Cummins thus posits a rule that an insurance company cannot have privileged communications with lawyers until litigation

between the insurer and its insured is imminent and their communications (at least in written form) would otherwise be protected from disclosure under work product principles.

The court finds Cummins's position to be extreme and one that cannot be squared with Indiana cases that have applied the attorney-client privilege to communications between a lawyer and an insurance company regarding the company's coverage rights and obligations to its insured. In *Hartford Financial Services Group, Inc. v. Lake Cnty. Park and Recreation Board,* 717 N.E.2d 1232 (Ind. Ct. App. 1999), the Indiana Court of Appeals directly addressed whether the attorney-client privilege protects from disclosure communications by outside legal counsel to an insurance company in response to the company's request for legal advice relating to the investigation and validity of an insured's claim, when the communications took place before the insurer and its insured began litigating coverage. The court ruled that the privilege attached and quoted with approval the comments of the California Court of Appeals that an insurance company's hiring of legal counsel to interpret a policy and determine whether the company is bound for all or some of an insured's claim is a "'classic example of a client seeking legal advice from an attorney.'" *Id.* at 1236 (quoting *Aetna Cas. & Surety Co. v. Superior Court,* 153 Cal. App. 3d 467, 476, 200 Cal. Rptr. 471, 471 (1984)). The court found no indication that Hartford's outside counsel was acting in any role other than as an attorney, such as, for example, an outside claims adjuster or provider of "simple business advice." *Id.* The court said: "Simply put, Hartford retained counsel to investigate [its insured's] claim, render legal advice and make a coverage determination under the policy." *Id.* The communications between the lawyer and client leading up to and constituting that advice were privileged. *Id.* at 1238.[2]

---

[2]    Indiana thus rejects the view espoused in *Country Life Ins. Co. v. St. Paul Surplus Lines, Inc.,* 2005 WL 3690565 (C.D. Ill. Jan. 31, 2005), that an attorney who advises an insurance company client whether the facts of an insured's loss fit within various terms of the policy is acting as a claims adjuster. *Id.* at \*7. The statement in *OneBeacon Ins. Co. v. Forman*

4

*Howard v. Dravet,* 813 N.E.2d 1217 (Ind. Ct. App. 2004), also addresses the attorney-client privilege in the context of insurer and attorney communications regarding an insurer's coverage obligations. An insurance company was served with a documents subpoena requesting its entire claims file. The trial court granted the insurer's motion to quash the subpoena on the ground that all documents in its claim file necessarily were protected from disclosure by the attorney-client privilege or work product doctrine because the insurer had hired outside counsel to advise it regarding the insurer's coverage obligations on the claim. The Court of Appeals reversed, finding that the "evaluation letter" written by outside counsel to the insurer contained legal advice and "is protected by the attorney-client privilege because it involved confidential communications," but that the existence of that letter was not sufficient to make every other document in the claim file privileged. *Id.* at 1222. For these other documents, the insurer was obligated to establish a privilege from disclosure on a document-by-document basis. *Id.*

The Insurers contend (with affidavits in support) that their outside counsel, lawyers with the Fisher Kanaris firm, were hired "to provide legal counsel and advice," were engaged only as "legal counsel," did not make the decisions relating to coverage, and never provided any claims

---

*Internat'l, Ltd.,* 2006 WL 3771010 at *5 (S.D.N.Y. 2006), that reports from coverage counsel that help an insurer make a coverage decision are not protected from disclosure, is also inconsistent with Indiana law. Moreover, the comments in these two cases focused on work product principles and not the attorney-client privilege. *See Country Life,* 2005 WL 36980565 at *7; *OneBeacon,* 2006 WL 3771010 at *5. And later cases from these states indicate that the attorney-client privilege protects from disclosure communications by an attorney to an insurance company about whether a claim falls within the scope of a policy's coverage. *See Lagestee-Mulder, Inc. v. Consolidated Ins. Co.,* 2010 WL 4781461 at *1 (N.D. Ill. Nov. 17, 2010) (general rule under Illinois law is that "communications between an insurer and its coverage counsel are privileged"; the lawyer sheds his lawyer role only when he actually makes the final coverage decision); *105 Street Assoc, LLC v. Greenwich Ins. Co.,* 2006 WL 3230292 at *3 (S.D.N.Y. 2006) (communications between insurer and coverage counsel consisting of legal advice and opinion are protected by attorney-client privilege).

adjustment services. (*See, e.g.,* Affidavit of Raymond F. Charleston, Dkt. 129).[3] Based on that testimony, the Insurers contend that the communications between them and Fisher Kanaris lawyers and staff regarding the Insurers' rights and obligations vis-à-vis Cummins's insurance claim are protected from disclosure by the attorney-client privilege. Cummins doubts that Fisher Kanaris acted only as legal counsel, argues that to the extent Fisher Kanaris gave advice about the Insurers' coverage obligations, it was not legal advice, and demands more proof that Fisher Kanaris did not have a role in claims adjusting. Cummins points to another case in which Fisher Kanaris lawyers were shown to have acted other than as legal advisors and their communications were ordered to be produced. But unlike the situation here, in that and other similar cases, there was evidence tending to show that the lawyers were hired to, and did, perform typical claims adjustment functions.

In *Illiana Surgery and Medical Center LLC v. Hartford Fire Ins. Co.,* 2010 WL 4852459 (N.D. Ind. Nov. 18, 2010), Hartford had hired a lawyer at Fisher Kanaris to conduct the insurance examinations the insureds were required to provide to support their property damage claim. The lawyer attended inspections of the insured's facilities. The lawyer never provided a coverage opinion. 2010 WL 4852459 at *3. The court found that the functions performed by the lawyer were functions that a claims adjuster typically performs. The lawyer did not attend to functions—like providing an opinion regarding coverage—that a lawyer typically might perform. *Id.* In *Irving Materials, Inc. v. Zurich American Ins. Co.,* 2007 WL 4616917 (S.D. Ind. Dec. 28, 2007), the insurance company had hired outside legal counsel "to help handle and adjust the claims because of the high volume of claims at issue." *Id.* at *2. The insurance

---

[3] Mr. Charleston is an Assistant Vice President-Regional Claims Manager for defendant Liberty Mutual Fire Insurance Company. (Dkt. 129, ¶ 1). Affidavits of representatives of the other defendant insurers were submitted; those affidavits provide substantially identical testimony as Mr. Charleston's affidavit regarding the hiring of Fisher Kanaris and the firm's role. (*See, e.g.,* Dkts. 123-9, 123-10, 126, 127, 128).

company's adjuster could not provide any information regarding claims that he supposedly had handled, and testified that the lawyer had made the claims calculations. Indeed, the main claims files were kept at the lawyer's office, and not at the insurance company. The court found that although some communications between the lawyer and the insurance company were attorney-client privileged communications, not all of them were. *Id.* at *4 ("The attorney-client privilege can, however, be invoked for information pertaining to general coverage issues (in contrast with the specific handling of the underlying claims) and other legal advice"). The lawyer was required to provide testimony, and produce any documents she had, regarding claims adjustment, but was not required to produce any documents "pertaining to coverage issues or any other non-claims-adjustment legal advice." *Id.* at *5.

There is no evidence in this case that Fisher Kanaris lawyers took on claims adjustment functions for Cummins's Claim, and Cummins does not point to any. The evidence indicates that the Insurers collectively hired Crawford Technical Services to oversee and conduct the claims adjustment functions. Cummins does not point to any gap in the work performed or provided by Crawford Technical Services that would suggest that claims adjustment (as opposed to claims coverage) was conducted by lawyers whose work is being hidden from Cummins's view.

Based on the above analysis and the court's *in camera* review of the documents that the Insurers have withheld from discovery on attorney-client privilege grounds, the court finds that the Insurers' privilege objection is well-founded as to the following documents:

7

| Category Doc. No. | Brief Description/Explanation |
|---|---|
| AC1, AC 2, AC3, AC4, AC8, AC9, AC14, AC17, AC18, AC19, AC20, AC21, AC22, AC23, AC25, AC26, AC27, AC28, AC29, AC30, AC31, AC32, AC35, AC36, AC37, AC38, AC39, AC43, AC44, AC45, AC46, AC47, AC48, AC49, AC50, AC51, AC52, AC53, AC54, AC56, AC57, AC58, AC59, AC60, AC61, AC62, AC63, AC64 AC65, AC66, AC67, AC68, AC69, I1, I2, I3, I4 | Communications with or from, or about communications with, counsel at Fisher Kanaris regarding hiring, policy issues, or investigation. |
| ACS1, ACS2, ACS3, ACS4, ACS6, ACS7, ACS8, ACS9, ACS10, ACS11, ACS12 | Communications with or from, or about communications with, counsel at Clausen Miller regarding subrogation issues. |
| D1 | Draft declaratory judgment complaint. |
| I7, I8 | Communications regarding declaratory judgment complaint. |
| H2, H4, H6 | Notes of communications with counsel. |

The Insurers have not satisfied their burden to show that the following documents (or *portions thereof*) are protected from disclosure by the attorney-client privilege:

| Category Doc. No. | Brief Description/Explanation |
|---|---|
| AC5 | Second email from Mr. Ezequiel, regarding communication with Cummins is not privileged; must be produced; may redact top email on first page. |

| | |
|---|---|
| AC6 | Top email from John E. Roberts may be redacted as privileged. Remainder of document regarding scheduling of meeting is not privileged and must be produced. |
| AC7 | Email and attachment from Mr. Ezequiel regarding claims adjustment matters are not privileged and must be produced. |
| AC10, AC11, AC12, AC13, | Email strings regarding setting of meetings. None privileged. |
| AC24 | First two emails, on page WH013 and top of WH013.1 regarding setting of meeting not privileged and must be produced. |
| AC34 | Email regarding non-privileged document. |
| AC40 | Top email and referenced Fisher Kanaris document may be redacted as reflecting attorney-client privileged communication. Second email (10/1/2008) and other attachments regarding claims adjustment specifics not privileged and must be produced. |
| AC41, AC42 | Email strings regarding setting of meetings. None privileged. |
| AC55 | Top email on page GLCWH036 may be redacted as privileged communication with counsel. |
| ACS5 | Communication does not concern legal matters. |
| I5, I6 | Does not involve communication with outside counsel; matters discussed concern business matters rather than legal advice or communications. |
| C38 | Communication does not concern matters for which legal advice sought or given. |
| V3 | No indication that communication concerns legal matters. |
| H1 | Handwritten notes of meeting before involvement of legal counsel. |
| H3 | Handwritten notes of meeting primarily concerning typical claims adjustment matters. |
| H5 | Handwritten notes of meeting concerning claims adjustment matters. |

## **Work Product Doctrine**

The Insurers' ability to withhold documents based on the work product doctrine is governed by federal law. *Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 658 (S.D. Ind. 1991). The work product doctrine protects from disclosure (1) documents and tangible things (2) prepared in anticipation of litigation or for trial (3) by or for a party or its representatives. Fed. R. Civ. P. 26(b)(3). The party asserting work product protection for any document bears the burden to establish that the document meets the definitional requirements for work product. *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996).[4]

Applying the work product doctrine in first-party insurance coverage dispute cases can be challenging because it is difficult to separate documents that an insurance company or its representatives prepared as part of the normal course of the insurance business from documents prepared for purposes of litigation with its insured. *See Harper,* 138 F.R.D. 655 (S.D. Ind. 1991) (containing detailed discussion for applying the anticipation of litigation factor in insurance coverage litigation); *Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc.,* 190 F.R.D. 532, 535 (S.D. Ind. 1999) ("Because an insurer's business is to investigate claims that may or may not result in litigation, application of the work-product privilege to insurance claims investigations has been frequently litigated"). Moreover, in the insurance context, the same document can serve both litigation and ordinary business purposes. *Harper,* 138 F.R.D. at 661 n.2.

---

[4] Even if materials otherwise merit work production protection, production may be required where the discovering party demonstrates that it has substantial need for the materials and cannot, without undue burden, otherwise obtain their substantial equivalent. Fed. R. Civ. P. 26(b)(3); *Logan,* 96 F.3d at 976. No amount of substantial need and burden will overcome work product protection of those portions of documents containing opinion work product, meaning the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). In addition, work product protection can be waived, including for opinion work product. *See generally* Fed. R. Evid. 502. The matters in dispute on Cummins's second motion to compel do not involve these principles.

The Seventh Circuit teaches that documents are prepared "in anticipation of litigation" for purposes of Rule 26(b)(3) where the "'primary motivating purpose behind the creation of a document or investigative report [is] to aid in possible litigation.'" *Binks Mfg. Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983) (quoting *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C. 1982)). *See also Stout v. Illinois Farmers Ins. Co.,* 852 F. Supp. 704, 706 (S.D. Ind. 1994) (for document to fall within work product doctrine, "it must pass the 'primary motivating purpose' test" discussed in *Binks*).

Many courts, including this one, have used presumptions in first-party insurance coverage cases to assist the parties and the court in distinguishing a document whose creation was primarily motivated by the prospect of litigation between the insurer and insured from one that would have been created in the absence of the prospect of litigation. In *Harper,* Magistrate Judge Foster ruled that a document prepared before an insurer makes a final decision on its insured's claim and is part of the factual inquiry or evaluation of the claim is not work product because "anticipation of litigation is presumed unreasonable under [Rule 26] before a final decision is reached on the claim." 138 F.R.D. at 663. A document prepared after claims denial is presumed to be work product. *Id.* These presumptions may be overcome "by specific evidentiary proof of objective facts that a reasonable anticipation of litigation existed when the document was produced. . . ." *Id.* at 663. *See also Stout,* 852 F. Supp. at 708 (focus must always be on "actual purpose for which a document was created"; "At the very least, an insurer must show a critical factor that made it anticipate litigation. . . *and* offer specific facts demonstrating that the critical factor did indeed make the insurer deal with the insured in a different way") (emphasis in original).

Based on Judge Foster's analysis in *Harper,* 138 F.R.D. 655 (S.D. Ind. 1991), and his analysis in *Stout v. Illinois Farmers Ins. Co.,* 150 F.R.D. 594 (S.D. Ind. 1993), *objections*

11

*overruled,* 852 F. Supp. 704 (S.D. Ind. 1994), Cummins argues for a "rule" that an insurance company cannot claim work product protection for any document that was prepared before its "final" claims decision or for any document that was not prepared and used *solely* to prepare for litigation. (*See* Cummins's reply brief at 10-11). Cummins does not acknowledge, however, that when Judge Barker ruled on objections to Judge Foster's order in *Stout*, she held that there is no "bright line rule" for invoking work product privilege, *id.* at 707, and that a document prepared for dual litigation and ordinary business purposes does not necessarily mean that the document is not work product. The Seventh Circuit's "primary motivating purpose" test applies; a document created with a dual purpose is not work product if the litigation purpose was not primary, but would be work product if it was primary. 852 F. Supp. at 706-07. Judge Barker also made clear that although presumptions may aid in the analysis of whether a document is work product, the focus must always be on the specific facts of a particular case. *Id.* at 707. *See also Goodyear Tire and Rubber,* 190 F.R.D. 532 (S.D. Ind. 1999) (in determining when an insurer reasonably anticipates litigation, court must "avoid bright line rules and examine the specific facts of the case").

The Insurers contend that they anticipated litigation with Cummins as of October 10, 2008, the date of their coverage position letter to Cummins, which expressed the Insurers' view that flood sublimits applied (limiting Cummins's coverage for property losses in two of its buildings to $50 million) and that a special deductible applied because these two buildings were within a 100-year flood zone. *See* October 10, 2008 letter, Dkt. 123-1 ("While we are still in the process of investigation and adjustment, the insurers have sufficient information to state their position on the deductible and sublimit of liability to be applied under the Policy"). Cummins asserts that the coverage position letter was not, by its own terms, the Insurers' absolute final word on Cummins's Claim and that Cummins and the Insurers continued to work on claims

12

adjustment matters after October 10, 2008. Cummins does not identify any particular date as the Insurers' final claims decision.[5]

The court agrees with the Insurers that their October 10, 2008 coverage letter reasonably may be viewed as a marked change in the relationship between the Insurers and Cummins with respect to Cummins's Claim. Although the document might not have been the Insurers' last word short of litigation regarding coverage issues, the letter clearly reflects the Insurers' initial and detailed decision regarding the coverage issues at the heart of the parties' disputes. *See Goodyear Tire and Rubber,* 190 F.R.D. at 536 (describing the *Stout* case as one where the insurer failed to block discovery because the subject documents were created while the insurer "was still making its initial decision to approve or deny its insured's claim). Given the magnitude of Cummins's property losses (which the parties knew shortly after the flood would exceed $100 million), and the centrality of the flood sublimits issues to whether insurance would wholly cover Cummins's losses, the court finds convincing the Insurers' argument that they reasonably anticipated litigation with Cummins when they provided their coverage analysis to Cummins in October 2008. At that point, the Insurers (and Cummins) knew that their differences of opinion amounted to tens of millions of dollars—an amount of money parties are likely to litigate about. That is not to say that every document prepared after October 10, 2008 is work product. The Insurers still must show, and the court must be convinced, that for each document the primary motivating purpose for its creation was litigation.[6]

---

[5]  Cummins argues that a document cannot be work product it if was prepared before the date the Insurers filed suit against Cummins in Illinois, or May 22, 2009, because "[t]here is no evidence that anyone anticipated litigation until then." (Cummins's reply brief at p. 14). Obviously, the Insurers *anticipated* filing suit before they did so.

[6]  The court rejects the Insurers' position, advanced without any supporting authority, that the work product doctrine protects from disclosure every document that contains or reflects an

The Insurers did not withhold from production any documents based *solely* on work product grounds. For those five documents that the court has ruled were not protected from disclosure by the attorney-client privilege and for which a work product objection also was made, the court addresses here the work product objection. The court finds that the Insurers' work production objection to production is not well-founded as to any of these documents. These documents must be produced by the Insurers within 7 days of this order:

| Category Doc. No. | Brief Description/Explanation |
| --- | --- |
| AC41, AC42 | Email strings regarding setting of meeting. No indication that primary motivating purpose for creation was litigation. |
| AC55 | Top email on page GLCWH036 may be redacted as privileged communication with counsel. Second email is not privileged, nor is there any indication that primary motivating purpose for second email was litigation. The second email is not protected from disclosure by work product doctrine. |
| C38 | Email strings regarding loss adjustment fund. No indication that primary motivating purpose for creation was litigation. Document is also not protected from disclosure by attorney-client privilege. |
| H5 | Handwritten notes of meeting. Focused on claims adjustment matters. No indication that primary motivating purpose for creation was litigation. |

**Documents Withheld on "Relevance" Grounds**

The Insurers submitted to the court for *in camera* review documents that they also withheld from production on relevance grounds. The court has reviewed those documents, which relate to adjustment and payment of Cummins's Claim. The Insurers have offered no argument in support of their relevance theory. The Insurers do not claim they are protected from disclosure by the work product doctrine, attorney-client privilege, or any privilege. There is no basis for withholding them from production. The Insurers must produce all documents on their

---

attorney's impressions no matter whether the document was generated in anticipation of litigation. (*See* Insurers' opposition brief, Dkt. 123, at p. 15).

privilege log withheld solely on relevance grounds. This applies to documents AC15, AC16, AC33, C2-C37 inclusive, C39-C52 inclusive, V1, V2, and V4-V33 inclusive.

## Conclusion

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Cummins's second motion to compel. Within 7 days of the entry of this order, the Insurers shall produce to Cummins the following documents identified on the privilege log submitted to the court in connection with its *in camera* review:

- AC5 in redacted form.
- AC6 in redacted form.
- AC7
- AC10-AC13
- AC 15-AC16
- AC24 in redacted form.
- AC33-AC34
- AC40 in redacted form.
- AC41-42
- AC55 in redacted form
- I5-I6
- ACS05
- C1-C52
- H1
- H3
- H5
- V1-V33

So ORDERED.

Date: 05/02/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Bryce H. Bennett Jr.
RILEY BENNETT & EGLOFF LLP
bbennett@rbelaw.com

Andrew J. Detherage
BARNES & THORNBURG LLP
andy.detherage@btlaw.com

Charles P. Edwards
BARNES & THORNBURG LLP
charles.edwards@btlaw.com

Kenneth W. Erickson
ROPES & GRAY, LLP
kenneth.erickson@ropesgray.com

David E. Heiss
FISHER KANARIS P.C.
dheiss@fisherkanaris.com

Peter Emanuel Kanaris
FISHER KANARIS PC
pkanaris@fisherkanaris.com

Eric D. Stubenvoll
FISHER KANARIS, P.C.
estubenvoll@fisherkanaris.com